IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CARL A. MARTIN, | ) | |
| | ) | |
| Petitioner, | ) | 8:16CV246 |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF NEBRASKA, | ) | MEMORANDUM AND ORDER |
| | ) | |
| Respondent. | ) | |
| | ) | |

    Carl A. Martin (Martin) has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. His petition is far too late.

    His claim--that he is entitled to equitable tolling or the like because he has a mental illness, as shown by the fact that he was adjudicated a Mentally Disordered Sex Offender at the time he was sentenced in 1988[1] and otherwise--is entirely lacking in merit and borders on the frivolous. I will grant the Respondent's motion for summary judgment and dismiss this matter with prejudice.

### BACKGROUND

    At the high end, Martin was sentenced to over 200 years in prison. His projected release ("jam") date is October 4, 2108, and his projected parole eligibility date is April 7, 2041[2] according to the Nebraska Department of Correctional Services' internet site for which I take judicial notice. The facts leading up to Martin's 1988 sentences are disturbing.

---

    [1]Martin received consecutive sentences for three counts of sexual assaults, one count of robbery, and two counts of using a knife to commit a felony.

    [2]Martin would be 84 if paroled on that date.

The Nebraska Supreme Court's opinion affirming the conviction and sentences describes in chilling detail what Martin did to several women:

> In count I, the prosecutrix testified that in the late evening of July 21, 1987, as she was driving home in Lincoln, Nebraska, a man sat up in the back seat of her car and put his left arm around her shoulders and his right hand up to her neck. The defendant stated, "[D]on't move or I'll cut your throat," and she said, "[P]lease don't hurt me." He told her he wanted money, and after driving for some time, she was directed to a parking lot of an elementary school. The defendant put a sweatshirt over her face, told her to remove her shoes, and tied her wrists together.
>
> After they got out of the car, the defendant told her he wanted to have sex with her and to lie down. The defendant pulled up her skirt and rolled her over on her side. The prosecutrix asked the defendant not to have anal intercourse, and he said he would not. The defendant attempted to penetrate her anally with his finger, but she told him it hurt, so he stopped. The defendant subjected the prosecutrix to vaginal intercourse while she was still tied with her eyes covered. When they returned to her car, the defendant untied her wrists. They drove to another area where the defendant got out and returned $2 he had taken from her earlier.
>
> The prosecutrix went to her boyfriend's apartment and told him what had happened. The police were called and she went to the hospital for an examination. The prosecutrix had marks on her wrists which caused her discomfort and a number of superficial abrasions on her back and buttocks. The doctor who examined her testified that she did not have any injury or trauma to her vaginal area.
>
> The prosecutrix in count II testified that on July 29, 1987, at 14th and Garfield Streets in Lincoln, Nebraska, at about 10:30 p.m., she was returning to her car after a trip to Omaha. The defendant approached the car and asked for a ride to Malone Community Center, to which she agreed. When they arrived at the center, the defendant attempted to give her money and then directed the prosecutrix into a nearby alley. The prosecutrix tried to leave the alley but the defendant stopped her. The

defendant then forced her out of the car, and she screamed for help. The defendant pushed her to her knees and began to choke her. The defendant told her to remove her clothes, ripped the shirt she had been wearing, and blindfolded her with it. He then told her to lie down on the ground. He removed his clothing and lay down on top of her. He directed her to rub his penis until he had an erection, and he attempted unsuccessfully to penetrate her vagina with his penis frontally and from the rear. He led her to another area and was successful in penetrating her vagina with his penis.

After these acts, he tied her wrists with a nightgown and had her lie down in the back seat of the car. The defendant drove to 16th and South Streets, told her to count to 25, and left.

At trial the prosecutrix testified that as a result of the assault she received abrasions on her back and bruises on her legs. There was no trauma noted on the pelvic examination. As to the choking, the victim testified she could not breathe, she was gasping for air, and she could not get air into her lungs. In response to questions, the victim testified, "I could picture myself ... like being found, like dead somewhere, with my parents having to come find me and seeing myself dead and not believing that-not believing that it was happening," and, when counting, "I saw myself like getting up out of the back of the car and him still being there and him being there and ready to kill me."

In counts III and IV, a first degree sexual assault count and use of a knife to commit a felony count, the prosecutrix-victim went to a laundromat on the morning of August 7, 1987. Another woman had been present but, at some point, the victim was alone with the defendant, who came up behind her, grabbed her, put a knife to her throat, and threatened to use the knife if she moved. He took her into the bathroom, made her sit on the floor, and closed the door. The defendant told her to take off her clothes and tied her shirt over her eyes. He had her lie down on the floor. He spread her legs apart, lay down on top of her, and had sexual intercourse with her for 2 to 3 minutes. When he was done, he told her to count to 30 after he left.

> After the prosecutrix heard the door close, she removed her blindfold and got dressed. The laundromat was empty, but just outside the door she spotted the woman who had been in there earlier. The victim told the woman she had been raped, and the woman, who later identified the defendant as the man in the laundromat, helped her contact the police and her husband. The emergency room doctor testified there was no trauma to the patient's vaginal area, but described the victim as being emotionally upset.
>
> The robbery and use of a knife crimes, counts V and VI, occurred an hour or so later that same day, August 7, 1987. At about 8:19 a.m., the victim left her home and went to take her car out of the garage. She placed her purse on top of the cardboard sunscreen which was sitting on the front passenger side floor. She started to put her keys in the ignition and shut her car door, but the door would not shut because a man was standing next to her with a knife.
>
> The defendant told her to give him her purse. She was unable to speak or move, and the man told her again to give him her purse. She told him to take the purse, and the defendant, holding the knife in his right hand, reached over her with his left hand and took the purse. He pulled her out of the car and said he was going to tie her up. She told him not to tie her up because she had a job interview, and he did not. He took her keys and, as he left, he shut the garage door, leaving the keys on the ground. She ran into the house and called the police. The victim identified the defendant in court as the man who took her purse.

*State v. Martin*, 440 N.W.2d 676, 679-681 (Neb. 1989).

The mandate of the Nebraska Supreme Court was filed on September 6, 1989. (Filing no. 12-2 at CM/ECF p. 1.) Martin was in no hurry to press the claims that are asserted here.

Martin filed a motion for state postconviction relief on July 1, 2002. (Filing No. 12-7.) This is the first time the record reflects that Martin raised any issues related to his mental status. Among other things (like ineffective assistance of counsel), Martin alleged that he had no memory of the "MDSO hearing." The 23-

page motion and affidavit is type written. It is perfectly understandable and coherent. The state district court denied Martin relief. Martin appealed to the Nebraska Court of Appeals and the appeal was denied by a summary affirmance on September 15, 2003. (Filing no. 12-3.) The Nebraska Supreme Court denied further review and the mandate was issued on December 8, 2003.

Martin filed his next state court action on July 30, 2002. (Filing no. 12-8.) It was a motion seeking review of the sentencing judge's determination that he was a Mentally Disordered Sex Offender. The motion is type written and it is logical and coherent. In this action, Martin essentially claimed that he was *not* a Mentally Disordered Sex Offender and the fact that he had been determined to be such was the fault of the psychiatrists[3] or his defense counsel. (Filing no. 12-8 at CM/ECF pp. 3-5.) The judge denied relief and the Court of Appeals affirmed noting that Martin could not seek such relief until he got closer to his prison release date. Given the reality that his sentence was very long, his motion was at best premature because he not yet been civilly committed under the provisions of the Mentally Disorder Sex Offender law.

Martin filed at least two other postconviction motions. Not surprisingly, both were denied. The Nebraska Court of Appeals affirmed the denial of the first of these two and the mandate was issued on June 23, 2009. (Filing no. 12-5 at CM/ECF p. 2.) The Nebraska Court of Appeals affirmed the denial of the other postconviction motion

---

[3]*According to Martin*, and in common parlance, both psychiatrists agreed that Martin was a sociopath. (Filing no. 12-8 at CM/ECF p. 4.) One of the psychiatrists also believed that Martin was a sexual sadist. There were other diagnoses as well, but there is no evidence that Martin is or ever was psychotic, delusional or suffered from severe cognitive deficits. (*Id.*) Martin asserts (filing no. 16) that he has been prescribed Celexa and other unspecified mental health medications while in prison for depression and anxiety. I assume for purposes of argument that Martin's assertions in this regard are true. I also take judicial notice of the fact that Celexa is labeled by the FDA to treat depression. Celexa Approval - FDA at page 4.

and the mandate issued in that case on April12, 2013. (Filing no. 12-6 at CM/ECF p. 2.)

Regarding the successive postconviction motions, it is not surprising that they were denied. Under Nebraska law, you don't get two bites of the postconviction apple; that is, "[a]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion." State v. Ortiz, 670 N.W.2d 788, 792 (Neb. 2003). Additionally, "[a] motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal." Hall v. State, 646 N.W.2d 572, 579 (Neb. 2002). See also State v. Thorpe, 858 N.W.2d 880, 887 (Neb. 2015) ("A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, no matter how those issues may be phrased or rephrased").

Martin, however, is a savvy pro se litigator. On November 4, 2008, he brought a habeas corpus action correctly citing to Neb.Rev.Stat. § 29-2801 (West 2015) asserting that the evidence was insufficient regarding one of the rapes and that his counsel was ineffective. (Filing no. 12-9.) The petition is perfectly coherent and makes no mention of mental problems. The district court wrongly denied the action as a successive postconviction motion disregarding Martin's clear pleading, and in May of 2009 the Nebraska Court of Appeals so held. But the Court of Appeals affirmed the denial of relief nevertheless because in Nebraska the statutory habeas corpus remedy is limited to attacking the jurisdiction of a criminal court and the criminal court clearly had jurisdiction when it tried Martin. (Filing no. 12-10.[4])

---

[4]In the opinion of the Court of Appeals there is a reference to the district court's finding that Martin had commenced a 1996 postconviction action that had been denied. *Id.* at CM/ECF p. 2. However, the record does not otherwise reflect the filing of a 1996 postconviction motion. I assume without deciding that a postconviction

On June 3, 2016, Martin filed his petition in this court. Summarized and condensed, he made three claims:

> CLAIM ONE: Petitioner was deprived of his Constitutional rights to be free from unreasonable seizure and arrest and due process because (a) he was seized and arrested for a misdemeanor offense without probable cause or a warrant as a pretext to investigate other crimes and (b) he was coerced into giving statements and evidence of other crimes immediately following the seizure and arrest.
>
> CLAIM TWO: Regarding Counts I through III, Petitioner was denied his Constitutional right to due process because the sentencing judge failed to find, as required by Nebraska law, that the alleged victims suffered serious injury.
>
> CLAIM THREE: Petitioner was denied his Constitutional right to due process because he was incompetent to stand trial or participate in sentencing.

(Filing no. 10.)

When I progressed the case, I observed:

> Petitioner claims to be presently incompetent yet his petition is as (or more) coherent as many pro se habeas petitions. There is nothing in the Petitioner's petition that would suggest that he is incapable of proceeding with this action. I note that Petitioner's hand written petition argues that "these claims are before the AEDPA . . . in 1996 . . . ." (Filing no. 1 at CM/ECF p. 13.) That sophisticated argument alone shows Petitioner's competence to proceed with this action. The fact, if it is one, that he may suffer from anxiety and depression or was found to be a mentally disordered sex offender under Nebraska law is insufficient to establish that he is now incompetent. The Respondent may wish to address this

---

action was filed in 1996 and denied sometime prior to November 4, 2008, the date of the Court of Appeals opinion. Martin does not argue otherwise.

issue and the related issue of whether Petitioner's alleged mental incompetence is sufficient to excuse his exceedingly tardy petition (his conviction was affirmed by the Nebraska Supreme Court in 1989).

*Id.*

### *ANALYSIS*

A one-year statute of limitations applies to habeas corpus petitions filed pursuant to 28 U.S.C. § 2254. *See* 28 U.S.C. § 2244(d)(1). "For state prisoners, the limitations period runs from 'the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.'" *Gordon v. Arkansas*, 823 F.3d 1188, 1194-1195 (8th Cir. 2016) (State prisoner who filed his federal habeas petition nearly eight months after one-year limitations period under Antiterrorism and Effective Death Penalty Act (AEDPA) failed to show that he exercised reasonable diligence in pursuit of his rights, as required for equitable tolling, despite his contention that he was in the prison's mental health unit for four months following his guilty plea) (citation omitted).

Martin was convicted and sentenced before the effective date of this statute of limitations. Therefore, he had one-year from the effective date (April 24, 1996) of the statute of limitations to commence his action in this court. *Peterson v. Gammon*, 200 F.3d 1202, 1204 (8th Cir. 2000) (Prisoners whose judgments of conviction became final before effective date of Antiterrorism and Effective Death Penalty Act (AEDPA) are given a one-year filing period after that date, or until April 24, 1997, plus any additional periods during which the statute is tolled, and no time before AEDPA's effective date should be used to calculate period of limitations for filing federal habeas petition).

For the sake of argument, even if one excluded *all* the time between Martin's initial conviction in 1988 and the issuance of the mandate on April 12, 2012 regarding his last state court suit of any kind (filing no. 12-6 at CM/ECF p. 2), Martin's June 3,

2016 federal court filing was still far too late. Martin does not argue otherwise. Rather he contends he is entitled to equitable tolling.

> The rules on equitable tolling can be stated as follows:
>
>> "'The Supreme Court has held that the limitations period set forth in '§ 2244(d) is subject to equitable tolling in appropriate cases.'" *Rues v. Denney*, 643 F.3d 618, 621 (8th Cir. 2011) (quoting *Holland v. Florida*, 560 U.S. 631, 645, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010)). "Equitable tolling ... asks whether federal courts may excuse a petitioner's failure to comply with *federal* timing rules, an inquiry that does not implicate a state court's interpretation of state law." *Holland*, 560 U.S. at 650, 130 S.Ct. 2549 (citation omitted). "[E]quitable tolling affords the otherwise time-barred petitioner an exceedingly narrow window of relief...." *Jihad v. Hvass*, 267 F.3d 803, 805 (8th Cir. 2001) (citation omitted). "The one-year statute of limitation may be equitably tolled 'only if [the movant] shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing.'" *Muhammad v. United States*, 735 F.3d 812, 815 (8th Cir. 2013) (alteration in original) (quoting *Holland*, 560 U.S. at 649, 130 S.Ct. 2549 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005))). "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Holland*, 560 U.S. at 653, 130 S.Ct. 2549 (quotations and citations omitted).

*Gordon*, 823 F.3d at 1195 (8th Cir. 2016).

Applying the foregoing rules, I find and conclude that there are no material facts in dispute and the record establishes that (1) Martin has not been pursuing his rights diligently and (2) nothing extraordinary stood in his way and prevented a timely filing of his federal petition. Next, I briefly elaborate why the foregoing is true.

9

First, Martin argues that the determination that he was a Mentally Disordered Sex Offender (MDSO[5]) must mean that he could not proceed to bring legal actions on his own behalf because the mental illness that triggered such a finding sufficiently proves his incapacity. He is wrong.

"A 'mentally disordered sex offender' means any person who has a mental disorder and who, because of the mental disorder, has been determined to be disposed to repeated commission of sexual offenses which are likely to cause substantial injury to the health of others." *State v. Harris*, 463 N.W.2d 829, 832 (Neb. 1990). In other words, a person could be an MDSO but fully capable of pursuing his or her rights in court. Indeed, under the MDSO law a person could be found to be a mentally disordered sex offender and yet have above average intelligence. *State v. Cook*, 463 N.W.2d 573, 575 (Neb. 1990).

Second, I have assumed that Martin suffers from depression and anxiety and that the prison doctors have provided him with medication to address those issues. But many fully functional citizens are treated for depression and anxiety and receive medications to address those concerns. There is no evidence that Martin is atypical when compared to the many free citizens who suffer from depression and anxiety and yet are able to fully manage their legal affairs. In short, the mere diagnosis of a psychiatric disorder is not enough to warrant tolling; the disorder must interfere with a petitioner's ability to file a timely petition. *See, e.g., Nichols v. Dormire*, 11 Fed.Appx. 633, 634 (8th Cir. 2001) (per curiam) (dismissal of habeas petition affirmed because the "degree and duration of Nichols's mental impairments" did not interfere with his ability to file a timely petition).

Third, I have carefully reviewed the pleadings filed by Martin in this court and in the state courts. They are coherent and organized. Indeed, as indicated earlier,

---

[5]The statutory framework under which Martin was found to be an MDSO was repealed and replaced in 1992. Laws 1992, LB 523, § 18.

Martin's pleadings are at least as good as the typical pro se prisoner who files a petition in this court. Furthermore, at least some of Martin's pleadings reflect a legal sophistication that exceeds that of the ordinary pro se litigant. For example, consider Martin's inventive use of the Nebraska habeas corpus statute in the state courts in an attempt to avoid the "second bite of the apple" bar for postconviction motions or his pleading in this court wherein it is alleged that "these claims are before the AEDPA . . . in 1996 . . . ."

Fourth, Martin's position now that the MDSO designation is proof of an extraordinary impairment is disproved by the fact that on July 30, 2002 he essentially argued in a state court that he was *not* an MDSO. This stark inconsistency is further evidence that Martin is now and was always fully able to bring a federal action had he been diligent.

In summary, the Court of Appeals has stressed that equitable tolling is an "exceedingly narrow window of relief." Martin has not come close to squeezing through that window.

### *No Certificate of Appealability*

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). The standards for certificates (1) where the district court reaches the merits or (2) where the district court rules on procedural grounds are set for in *Slack v. McDaniel*, 529 U.S. 473, 484-485 (2000). I have applied the appropriate standard and determined Petitioner is not entitled to a certificate of appealability.

IT IS ORDERED that:
1. The petition (filing no. 1) is denied and dismissed with prejudice.
2. The court will not issue a certificate of appealability in this matter.

11

3. The court will enter a separate judgment in accordance with this order.
4. Respondent's motion for summary judgment (filing no. 12) is granted.
5. Petitioner's motion to grant psychiatric expert (filing no. 17) and Petitioner's motion to appoint counsel and for an evidentiary hearing (filing no. 18) are denied.

DATED this 29th day of November, 2016.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge